**ELAINE STROMGREN, Fla. Bar #0417610**
estromgren@jameshoyer.com
**JOHN R. NEWCOMER, JR., Fla. Bar #143380**
jnewcomer@jameshoyer.com
JAMES, HOYER, NEWCOMER &
SMILJANICH, P.A.
One Urban Centre, Suite 550
4830 West Kennedy Boulevard
Tampa, Florida 33609
Telephone:    (813) 286-4100
Facsimile:    (813) 286-4174
    Lead Counsel for Relator
**KENNETH C. BAUMAN, OSB # 69014**
kencbauman@comcast.net
1406 S.W. Upland Dr.
Portland, Oregon 97221
Telephone:    (503) 223-1468
Facsimile:    (503) 655-3933
    Local Counsel for Relator

FILED '08 NOV 13 15:19 USDC-ORP

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

CV'08-1343 KI

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* TIANA JULIAN | Civil Case No. |
| Plaintiffs, | **QUI TAM COMPLAINT** |
| v. | **Pursuant to False Claims Act** |
| | **31 U.S.C. § 3730(b)(2)** |
| THE SCOOTER STORE, INC., | **(UNDER SEAL)** |
| Defendant. | **JURY TRIAL REQUESTED** |

### INTRODUCTION

1.  This is an action brought by Relator, Tiana Julian, on behalf of the United States of America, to recover damages and civil penalties against Defendant, The Scooter Store, Inc.(hereinafter "Defendant"), pursuant to the Federal Civil False Claims Act, Title 31 U.S.C. § 3729 et seq., ("FCA").

2. Relator's *qui tam* action alleges that Defendant has defrauded government healthcare programs including but not limited to Medicare, Medicaid, Tricare, and Champ VA through practices such as: selling clients medically unnecessary, upgraded durable medical equipment for the sole purpose of obtaining greater reimbursement from government healthcare programs; routinely waiving patient co-payments required by government healthcare programs; and enabling clients to fraudulently qualify for certain types of equipment under their government health insurance.

3. The FCA provides that any person who submits a false claim to the government is liable for a civil penalty of between $5,500 and $11,000 for each such claim, and three times the amount of the damages sustained by the government. The Act permits persons having information regarding a false or fraudulent claim against the government to bring an action on behalf of the government and to share in any recovery. Pursuant to 31 U.S.C. § 3730(b)(2), this complaint must be filed *in camera* and under seal, without service on the defendant. The complaint remains under seal while the government conducts an investigation of the allegations in the complaint and determines whether to join the action.

## JURISDICTION AND VENUE

4. This action arises under the False Claims Act, 31 U.S.C. § 3729 et seq. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, 31 U.S.C. § 3730, and 28 U.S.C. § 1345.

5. This Court has personal jurisdiction over Defendant pursuant to 31 U.S.C. § 3732(a), which authorizes nationwide service of process. Defendant can be found in, resides in, or has

transacted business in the District of Oregon.

6. Venue is proper in the District of Oregon pursuant to 31 U.S.C. § 3732(a) because Defendant can be found in, resides in, or has transacted business in the District of Oregon, and many of the alleged acts occurred in the District of Oregon.

7. No allegation set forth in this Complaint is based on a public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or General Accounting Office ("GAO") report, hearing audit, or investigation, or from the news media.

## PARTIES

8. Relator, Tiana Julian, is a resident of Washington County, Oregon. Relator was employed for three years and three months as an account manager and later as a distribution center manager for Defendant at its Portland, Oregon location.

9. Defendant, headquartered at 1650 Independence Drive, New Braunfels, Texas 78130, is the leading provider of Power Mobility Devices ("PMD") in the United States. The company was founded in 1991 by Doug and Susanna Harrison. Doug Harrison is the President and CEO of Defendant. Defendant has approximately 1,400 employees at various locations throughout the United States, including Puerto Rico. In 2007, Defendant reported $318 million in revenue.

## FACTUAL ALLEGATIONS

10. The Medicare guidelines published by the Centers for Medicare and Medicaid Services ("CMS") define PMDs as covered items of Durable Medical Equipment that are in a class

**Page 3**   **Qui Tam Complaint**
*United States ex rel. Tiana Julian v. The Scooter Store,*

of wheelchairs that includes power wheelchairs (four-wheeled motorized vehicles whose steering is operated by an electronic device or joystick to control direction and turning) and power operated vehicles/scooters (three or four-wheeled motorized scooters that are operated by a tiller) that a beneficiary uses in the home.

11. The aforementioned guidelines outline the criteria used to determine whether a possible beneficiary qualifies for a PMD under his/her government health insurance program. For example, PMDs may be medically necessary for individuals who cannot effectively perform "Mobility-Related Activities of Daily Living" in the home using a cane, walker, manually operated wheelchair, or scooter. Most individuals who require power wheelchairs, as opposed to scooters, are non-ambulatory and have severe weakness of the upper extremities due to a neurologic or muscular condition.

12. Relator observed Defendant engaging in numerous types of fraudulent activity with regard to the sale of its PMDs while employed with and for Defendant. Defendant's sales representatives routinely sold clients unnecessarily upgraded equipment for the sole purpose of receiving greater reimbursement from government healthcare programs. For example, because it is more profitable for Defendant to be reimbursed by Medicare for a power wheelchair as opposed to a scooter, Defendant would often sell a client, who was only qualified to receive a scooter, the more expensive power wheelchair instead, thereby causing a fraudulent claim for payment to be submitted to Medicare. Defendant engaged in this fraudulent practice of unnecessarily upgrading equipment in connection with the sale of numerous of its products.

13. In addition, Defendant routinely waives clients mandatory patient co-payments required by government healthcare programs in order to induce beneficiaries to purchase more expensive equipment. Medicare, and other government healthcare programs, require that the patient pay a co-payment of 20% of the allowed purchase price. By unlawfully waiving patient co-payments, Defendant causes inflated claims for reimbursement to be submitted to government healthcare programs.

14. Defendant also counsels clients on how to fraudulently qualify for the receipt of certain equipment under their government insurance plans. For example, if a client does not qualify for the receipt of a power mobility device under the Medicare guidelines, Defendant uses probing questions to initiate a discussion during which the client is informed of the types of health conditions which necessitate the provision of these devices under Medicare. Defendant then leads the client into falsely representing to his/her physician that he/she has a "qualifying" health condition, thereby causing false claims for payment to be submitted to government healthcare programs.

15. Defendant also uses this technique to coerce clients into falsely stating that they are not ambulatory in the home since the Medicare guidelines require that beneficiaries of PMDs are not capable to effectively perform "Mobility-Related Activities of Daily Living" in the home. Defendant's corporate office is involved in promoting this fraudulent practice. Relator observed situations in which a Defendant technician would refuse to complete delivery of a PMD because the client would state that he/she did not need to use the device in the home. The corporate office would then send a notice instructing the local office to complete the

delivery because the Defendant had "educated" the client and the client was now claiming that he/she needed the device for use inside the home.

16. After observing and investigating Defendant's false claims for payment described above, Relator followed company protocol and reported Defendant's fraud to her direct supervisor, then to an employee advocate, and then to the compliance officer. When these individuals failed to address her complaints, Relator, in August of 2008, sent an email to founder, President, and CEO of Defendant, Doug Harrison, identifying the fraudulent activities. The following day, Mr. Harrison informed Relator that he would call her to discuss her allegations.

17. Relator was thereafter contacted by Defendant's second-in-command, Executive Vice-President Roger Mack and General Counsel Mike Clark. Mike Clark called Relator again to advise her that he and Corporate Compliance Officer Tim Zipp would fly to Portland, Oregon the last week of August to further interview her.

18. When Mr. Clark and Mr. Zipp arrived, they informed Relator that they had already researched her allegations and determined the problem was localized at Defendant's Portland Distribution Center (hereinafter "PDC") which covers Oregon, Montana, and the southern part of the State of Washington. Relator knew this to be untrue as she had already obtained documents and recordings indicating the problems were also occurring in other parts of the country including Ohio, New York, California and Louisiana.

19. Shortly after Relator's meeting with Mr. Clark and Mr. Zipp, Claude Olar, Director of Distribution, and Mark Allen, Vice-President for Operations, appeared at Relator's office and

terminated her employment. Relator believes that her employment was terminated as a direct result, and retaliation, of her investigating and reporting Defendant's false claims for payment.

## DAMAGES

20. Defendant's PDC is one of more than 60 distribution centers and remote warehouses owned and operated by Defendant in the United States. At the time of her dismissal, Relator estimates that the PDC processed 10 questionable sales per month.

21. Power wheelchairs were billed to government healthcare programs at between $4,000 and $15,000 depending upon options; however the average reimbursement was $3,600 per unit.

22. Based on Realtor's employment experience, she believes Defendant's PDC was typical of Defendant's other distribution centers in terms of sales. Consequently, she estimates losses to the government at $2.16 million per month or $32.4 million since approximately May of 2007.

## COUNT I

### Violation of False Claims Act, 31 U.S.C. § 3729(a)

23. Relator re-alleges and incorporates by reference the allegations of paragraphs 1-22 of this complaint.

24. This count sets forth claims for treble damages and forfeitures under the federal False Claims Act, 31 U.S.C. §§ 3729-3732, as amended.

25. As described above, Defendant has submitted, and/or caused to be submitted, fraudulent claims to government healthcare programs by selling clients medically unnecessary,

upgraded durable medical equipment for the sole purpose of obtaining greater reimbursement from government healthcare programs; routinely waiving patient co-payments required by government healthcare programs; and enabling clients to fraudulently qualify for certain types of equipment under their government health insurance.

26. Defendant has knowingly violated:

   a. 31 U.S.C. § 3729(a)(1) by knowingly presenting, or causing to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval;

   b. 31 U.S.C. § 3729(a)(2) by knowingly making, using, or causing to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government;

   c. 31 U.S.C. § 3729(a)(3) by conspiring to defraud the Government by getting a false or fraudulent claim allowed or paid; and/or

   d. 31 U.S.C. § 3729(a)(7) by knowingly making, using, or causing to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government.

27. By reason of Defendant's false claims, the United States has been damaged and possibly continues to be damaged.

////

////

////

## COUNT TWO

### Defendant's Violation of 31 U.S.C. § 3730(h)

28. Relator re-alleges and incorporates by reference the allegations of paragraphs 1-22 of this complaint.

29. In violation of the False Claims Act § 3730(h), Defendant took negative employment actions against Relator as a result of lawful actions taken by Relator in furtherance of her *qui tam* action.

30. Defendant terminated Relator's employment in retaliation of Relator's investigation and reporting of Defendant's false claims for payment to government healthcare programs.

31. As a result of Defendant's retaliatory and discriminatory conduct, Relator has suffered damages.

## PRAYER FOR RELIEF

WHEREFORE, Relator requests that judgment be entered against Defendant, ordering that:

32. Defendant pay an amount equal to three times the amount of damages the United States has sustained because of Defendant's actions, plus a civil penalty against Defendant of not less than $5,500, and not more than $11,000 for each violation of 31 U.S.C. § 3729;

33. Relator be awarded the maximum amount allowed pursuant to 31 U.S.C. § 3730(d);

34. Defendant cease and desist from violating the False Claims Act, 31 U.S.C. § 3729 et seq.;

35. Relator be awarded all damages available pursuant to 31 U.S.C. § 3730(h) as a result of Defendant's retaliation against Relator, including but not limited to 2 times the amount of back pay, interest on the back pay, and compensation for any special damages as a result of

the discrimination, including damages for emotional distress;

36.   Relator be awarded all costs of this action, including attorneys' fees, expenses, and costs pursuant to 31 U.S.C. § 3730(d) and (h); and,

37.   The United States and Relator be granted all such other relief as the Court deems just and proper.

Dated this 13th day of November, 2008.

                        Respectfully submitted,

                        ELAINE STROMGREN
                        John R. Newcomer, Jr.
                        James, Hoyer, Newcomer &
                        Smiljanich, P.A.

                        */s/ Kenneth C. Bauman*
                        KENNETH C. BAUMAN
                        Local Counsel for Relator